GEORGE W. STANFORD, Conservator, *et al.*

*v.*

JAMES R. MANN *et al.*

*Filed at Springfield April 3, 1897—Rehearing denied June 3, 1897.*

1. PRINCIPAL AND AGENT—*facts insufficient to show the fiduciary relation of agency.* Evidence that one party was formerly in another's employ, that he shared the same office with him after his employment terminated, and that he sometimes attended to the other's business during periods of the latter's insanity, etc., is not of itself sufficient to establish the fiduciary relation of principal and agent between the two.

2. TRUSTS—*when purchase of land will not be declared to be in trust.* A purchase in good faith by one party of land offered to his office associate, made during the latter's absence, will not be declared in equity to have been made in trust, where no fiduciary relation existed between the two parties and the purchaser made a *bona fide* but unsuccessful effort to obtain the property for the other upon the latter's terms.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

GEORGE B. POWER, and PECK, MILLER & STARR, for appellants.

GEORGE W. MILLER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Walter Q. Gresham and Matilda Gresham, his wife, together with the appellees, James R. Mann and Emma C. Mann, his wife, filed their bill in the Superior Court of Cook county October 13, 1893, for partition of a twenty-acre tract of land, against the appellants, Josiah H. Bissell, who had been adjudged a lunatic, and George W. Stanford, his conservator, impleaded with others as defendants. Appellants answered the bill, and on October 24, 1894, filed their cross-bill against appellees, charging that in April, 1890, Bissell went to Rhode Island to see William H. Potter, with whom he had been negotiating for the purchase of an undivided half of forty acres of land, of which the tract sought to be partitioned was a part, to try to effect such purchase; that as a result of such negotiation and visit, Potter, about May 15, 1890, made a proposition through his agent, Maclay, at Chicago, to sell said interest to Bissell; that Bissell was then absent from Chicago and James R. Mann was in charge of his office and business; that Mann, without the knowledge or consent of Bissell or his conservator, accepted said offer in his own name and carried out the purchase; that it was the duty of Mann, if he accepted the said offer, to accept the same as the agent of Bissell and on his behalf, and that therefore the title conveyed to Mann was charged with a trust for Bissell. The prayer of this cross-bill was, that Bissell should have the benefit of the purchase from Potter; that the premises should be decreed to belong to him, and that Mann should account for the proceeds of such sales as had been made. On a hearing the cross-bill was dismissed for want of equity.

It appears that Bissell, who was an attorney, was also engaged in purchasing real estate for various clients, with whom he made arrangements by which he had the management of it, and was accustomed to subdivide, im-

prove and sell it for a share of the net profits. Under some such arrangement he became interested, in 1886 and 1887, in the forty acres in question. He and Mrs. Gresham, (wife of Judge Walter Q. Gresham,) Martha J. Boardman and Henry H. Walker had acquired an undivided half of the tract, Bissell's interest being an undivided one-twelfth. The other undivided half being owned by Potter, they could not subdivide and sell, and so a bill for partition was filed at their instance by Mrs. Boardman, March 3, 1887, to either effect a division or to bring about a sale of Potter's interest. Bissell negotiated with Potter for the purchase of his interest from time to time, and in case of an agreement as to price he expected to find friends or clients, as in other cases, who would take the Potter interest and allow him to manage and subdivide the tract for a share of the net profits. It had been agreed between him and Maclay, Potter's agent, that if the purchase was effected they would divide the commission obtained from Potter. As a result of the negotiation Potter made the offer alleged in the cross-bill, through his agent, Maclay. Bissell was then insane and in the Buffalo asylum. He had an office with Mann, and the proposition was brought to Mann by Maclay. They discussed the matter, and Maclay told Mann that there was a commission of $275 in it for Bissell if the property could be sold. Mann had no means belonging to Bissell to carry out the purchase if he should accept it for Bissell and could do so, and furthermore he knew that Bissell did not intend or expect to buy it for himself, but only to find parties who would take it and let him manage it. If Bissell had been present and sane he could not have accepted and completed the transaction except by finding such parties, but he expected to make half the commission, and get the forty-acre tract in such shape that he could manage it and share in the net profits. Mann was not in a condition to take the property for himself, and he knew of none of his clients who wanted it. Being

desirous of aiding Bissell, both in the commission and subsequent management, he told Maclay that he would accept the offer, and he then expected to find some of Bissell's friends to whom he could turn over the property, who would give Bissell a contract for management. He offered the property to Mrs. Boardman, who was already a co-tenant with Bissell, and to Shannon Bros. and other clients of Bissell, including F. A. Luce. Bissell had talked with Luce about the property and had written to Mann to see him. The commission and management were all that Bissell expected to get out of the purchase or that Mann supposed that he expected to get. All the efforts to place the property in that way failed. Finally Mrs. Gresham consented to take a half interest in the purchase under some agreement that Mann was to manage it for her, and Thomas Scanlan, who was then occupying a room in the suite of offices with Mann, took a one-fourth interest. Mann made up the other fourth of the cash payment. The purchase was completed and Mann received the $275 for Bissell's share of the commission, for which he accounted to Bissell. Mann conveyed to Mrs. Gresham her half interest and executed a declaration of trust to Scanlan for his one-fourth. He did not profess to act in the final purchase for Bissell or in his interest, but acted for himself and Mrs. Gresham and Scanlan.

It is claimed that Mann stood in a fiduciary relation to Bissell, as an agent or representative, and that although he could not carry out the purchase in the interest of Bissell so as to give Bissell the management and an interest in the net profits as well as the commission, yet upon his failure to do so he was debarred from acquiring any interest in the property himself and could only take it in trust for Bissell. The following facts furnish the ground for the claim: In 1881 Mann entered Bissell's office on a small salary for the purpose of helping to edit Bissell's Federal Reports. From that time he was in the employ of Bissell until December 1, 1885, with the privi-

lege, during the latter part of the time, of doing outside
law business on his own account. Bissell went to Europe
in 1882, and during his absence Mann attended to his law
business. In 1884 Bissell was insane and was placed in
an asylum at Canandaigua, New York, and had a second
attack in 1885. During these periods of insanity, Mann,
who was then in his employ on a salary, had charge of
his business and had written authority from his committee
or conservator. After December 1, 1885, Mann was not
in Bissell's employ, but formed a partnership with one
Copeland, and remained in Bissell's office paying rent.
He performed some services for Bissell and attended to
his business during several attacks of insanity. In Jan-
uary, 1888, Bissell was committed to the Buffalo asylum,
and on May 1, 1888, Mann and his associates rented new
offices and moved Bissell's office fixtures to them. After
that time Bissell paid office rent and his share of office
expenses to Mann. From about October 1, 1888, until
May 11, 1890, Bissell was in Chicago most all the time
attending to his business. He then became insane and
again went to the asylum.

We do not regard these facts sufficient to establish the
relation insisted upon. The parties were friends and
office associates, but that was all. When the offer was
made, Mann was under no obligation whatever to do any-
thing about it. He was not Bissell's agent with respect
to it or his attorney for any purpose. Bissell had no
present interest in the purchase except to the extent of
his commission, which was secured to him. Any further
interest was problematical, and dependent upon his find-
ing parties who would take the land and upon the terms
of management that he could obtain from them. It was
not the duty of Mann to purchase property for Bissell
which Bissell did not intend to purchase on his own ac-
count and for himself, and he would have had no right to
use the funds of his insane friend for such a purpose, if
he had any.

But appellants say that Mann volunteered to act in Bissell's behalf in the purchase and must account for the benefits resulting. If he did volunteer to act for Bissell and succeeded in making a contract for him, Bissell is entitled to the benefit of it. (*Dennis* v. *McCagg*, 32 Ill. 429.) He undertook to help earn the commission for Bissell, and offered the property to Bissell's clients in his behalf, so as to give Bissell the management, if possible. He received the commission and paid it to Bissell, but he failed in securing the contracts because Bissell's friends and clients would not engage in them. Bissell got all that could be got. The clients would not take the purchase and have him manage the property, and he would not have got the commission if Mann had not done what was done and closed the purchase. He was benefited to that extent.

One of the things required to perfect the trade was the dismissal of the partition suit of Mrs. Boardman, and this was done by Mann. That bill had answered its purpose when the property was bought from Potter, and we do not see how Bissell could have been injured by it. The purpose which he had in view was to get the property in shape to be subdivided and sold, and this had been accomplished. The subsequent conduct of Bissell shows that he did not understand that the purchase from Potter was for him or that he acquired any interest under it. He recovered from his spell of insanity, and in September, 1890, when the north half of the forty-acre tract was sold to P. W. Gates, he made a deed of his original interest. Statements of account and of the interests of different parties were made, showing the sale and showing Mann's interest, to which Bissell raised no objection or question. There was a proposed sale of the south half of the tract, which was never consummated, and also a sale to a railroad company of right of way, and during all these transactions Bissell made no claim that the purchase from Potter was for him. He had

other statements of account to which he made no objection. He knew that the purchase was not in fact made on his account, but that Mrs. Gresham, Scanlan and Mann had paid the money and he had received his commission for the sale. No claim of the kind was made until after Bissell again became insane and was committed to the asylum at Kankakee, in November, 1892. About the time the original bill was filed in this case it was claimed the purchase was for Mrs. Boardman, and this claim was subsequently made on behalf of Bissell.

Appellees have assigned some cross-errors touching the rulings of the court in the admission of evidence, but as the decree will be affirmed it is not necessary to notice them.

We are satisfied that Mann did all that he was bound to do for Bissell, and that he is not liable to account to him or his conservator, and the decree of the Superior Court of Cook county is affirmed. *Decree affirmed.*